**Robert D. OEST, Petitioner,**

v.

**DEPARTMENT OF JUSTICE,**
**Respondent.**

**No. 03–3223.**

United States Court of Appeals,
Federal Circuit.

Feb. 9, 2004.

Before MICHEL, CLEVENGER, and SCHALL, Circuit Judges.

PER CURIAM.

Robert D. Oest seeks review of the final decision of the Merit Systems Protection Board ("Board") dismissing his appeal on the ground that the Board lacked jurisdiction. The Board rejected Mr. Oest's contention that his resignation from his job at the Bureau of Prisons was in fact a constructive removal prompted by intolerable working conditions and found instead that Mr. Oest had no cause of action because he voluntarily retired. *Oest v. Dep't of Justice,* No. DE1221020269–W–1 (Mar. 1, 2003). For the reasons that follow, we *affirm* the final decision of the Board.

## I

Mr. Oest was employed by the Bureau of Prisons as a Corrections Officer at its Englewood, Colorado facility. In or shortly after March of 1996, Mr. Oest reported to his superiors that a coworker had physically abused an inmate. An investigation of the incident in due course concluded that the coworker had used abusive language toward the inmate but found the evidence insufficient to sustain Mr. Oest's allegations of physical abuse or unreasonable physical force.

Mr. Oest then received anonymous notes labeling him a "snitch," bits of cheese alluding to his status as a "rat," and indirect threats, such as "your day will come sooner or later."[1] Fearful for his safety and distraught, Mr. Oest sought and obtained a transfer to the Food Services Department in June of 1996, while the incident was being investigated.

Mr. Oest then worked in the Food Services Department for approximately three years, during which time he was subject to fewer incidents of harassment. In November of 1999, Mr. Oest reported a hearsay comment from another staff member about his alleged snitching back in 1996. The alleged comment was investigated and found not sustainable. Also in November 1999, Mr. Oest filed a complaint alleging that he had been denied promotions and other requests in reprisal for his whistleblowing. When asked for specifics, howev-

---

1. The Board accepted Mr. Oest's testimony concerning the negative reaction of his fellow Correctional Officers and supervisors as true for the purposes of this analysis, so we do likewise.

er, Mr. Oest's attorney declined to provide them, stating that such disclosures could lead to further acts of harassment.

In May of 2000, Mr. Oest was granted twelve weeks of leave under the Family Medical Leave Act, to end on August 8, 2000. While on that leave, Mr. Oest was notified that he was being removed from his position in the Food Services Department because his absence from work created an undue hardship, and that he was being returned to his position as a Corrections Officer. Mr. Oest objected to his reassignment and requested that he be put on administrative leave on August 7, 2000, the day before his twelve weeks of approved leave would expire. His request was denied. On the last day of his approved leave, he submitted his written resignation, indicating that his act was "[d]ue to an on-going hostile work environment and recent involuntary move to Correctional Service department."

## II

In May of 2002, Mr. Oest filed an Individual Right of Action appeal with the Board, alleging, *inter alia*, that his resignation was not voluntary, but instead was compelled by the intolerable working conditions created by the continuing threats arising from his role in the 1996 incident. The administrative judge assigned to Mr. Oest's case conducted an evidentiary hearing, the purpose of which was to determine if Mr. Oest could prove that his resignation was not voluntary.

After conducting a hearing and considering all the evidence, an administrative judge concluded that Mr. Oest failed to demonstrate that his resignation was involuntary. The administrative judge found that Mr. Oest had been the target of ongoing, but intermittent, harassment from fellow employees because of his reporting of the alleged physical abuse incident in 1996. Nonetheless, the administrative judge found that Mr. Oest continued to work for several years before resigning, suggesting that the harassment was not of such a severe nature to render continuation of work intolerable. Also, the administrative judge found that Mr. Oest had never been directly threatened. With regard to Mr. Oest's reassignment in the summer of 2000 to the Corrections Department, the administrative judge found that any fear Mr. Oest claimed to have about his personal safety because his coworkers would not come to his aid in the event of inmate violence was purely subjective and speculative. In addition, the administrative judge found that management of the facility was supportive of Mr. Oest in seeking to get the facts about alleged acts of harassment and to assist Mr. Oest, but that Mr. Oest was uncooperative.

In sum, considering all the evidence, the administrative judge concluded that the alleged coercive acts about which Mr. Oest complained, and which formed the basis for his contention that his resignation was involuntary, "simply would not have caused a reasonable person to resign from his position." Consequently, the administrative judge held that Mr. Oest had failed to carry his burden of proving that his resignation was in fact a constructive removal, and dismissed the appeal for want of jurisdiction.

Mr. Oest did not seek review from the full Board, and thus the initial decision of the administrative judge became the final decision of the Board. Mr. Oest timely sought review in this court, and we have jurisdiction under 28 U.S.C. § 1295(a)(9) (2000).

## III

We must affirm the final decision of the Board so long as it is not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 7703(c)(1) (2000). When the Board's decision rests on findings of fact, those findings must be supported by substantial evidence. *Id.* § 7703(c)(3).

An employee who voluntarily resigns from federal employment has no appeal rights to the Board, and resignations are presumed to be voluntary. *Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1340–41 (Fed.Cir. 2001). The Board does have jurisdiction over constructive removals, however, but the burden is on the employee to prove that a resignation is in fact involuntary and "thus tantamount to a forced removal." *Id.* at 1341. One way to demonstrate an involuntary resignation is to show that the employer has created working conditions "so intolerable for the employee that he or she is driven to involuntarily resign or retire." *Id.*

We have reviewed the record in this case, and the ultimate finding by the Board–that a reasonable person would not have been compelled to resign given the workplace conditions that Mr. Oest faced from 1996 to his resignation in August of 2000–is not arbitrary or capricious, and is in accordance with law. It is supported by the underlying fact findings that the harassment to which Mr. Oest was subjected was not excessive, and in fact diminished over time; that he endured the harassment even during its most severe periods without the need to resign; that the management was helpful whereas Mr. Oest was not in seeking to reduce the events of harassment; and that Mr. Oest was never directly threatened with harm. Furthermore, substantial evidence in the record supports each of these facts found by the Board.

We therefore affirm the final decision of the Board.